DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 5:10 CR 239 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| Salladen D. Hall, | ) | |
| | ) | |
| Defendant. | ) | |

### I.  Introduction

The defendant, previously convicted of a felony, has been indicted for possession of a firearm and ammunition that had traveled in interstate commerce.  The Court has conducted four separate evidentiary hearings and now has before it the necessity to rule on the defendant's motion to suppress the seizure of the weapons and the bullet.  Doc. 12.

Initially, the Court conducted two evidentiary hearings on June 10 and June 14, 2010 in response to the government's motion for an order of detention of the defendant.  During the first evidentiary hearing, it became apparent to the Court that an initial incriminating statement taken from the defendant appeared to be subject to suppression for failure to abide by the mandates of *Miranda v. Arizona*.  Consequently, the Court continued the detention hearing and after the second hearing, concluded that the defendant had made a statement to an agent of the F.B.I. that conformed with the teachings of *Miranda v. Arizona* and denied the defendant's motion for bond and ordered detention.  However, after considering the testimony of Officer Mongold, the Court concluded that defendant's motions to suppress statements made to Officer Mongold (Doc. 7 and 13) are well-taken, and are GRANTED.

(5:10 CR 239)

Subsequently, the defendant moved to suppress the seizure of the weapon and ammunition (Doc. 12), and the Court conducted two additional evidentiary hearings with respect to the defendant's motion to suppress the seizure of the weapons and bullet, all of which preceded the incriminating confession made by the defendant to the F.B.I. agent.

<u>II.  A Brief Review of the Factual Setting and Officer Testimony<br>Regarding Seizure of the Weapon and Bullet</u>

Approximately 12:50 a.m. on April 1, 2010, Canton Police officers were dispatched to the 1200 block of Third St. SE based on reports that men were firing guns and observed fleeing into a home identified as 1219 Third St. SE in Canton, Ohio.  This house is a two-story single family residence.

A number of police officers were in the area and arrived on the scene.  The first officer on the scene, Officer Heslop, secured his assault rifle from the cruiser and began observing the perimeter of the house.[1]  Officer Heslop secured his assault rifle from the cruiser "because of the caller stating it was possibly an AK-47 that she'd heard and/or seen.  Due to the firepower, we try to match or overpower our subjects we're going up against."[2]

When the police officers arrived, they themselves had not heard shots fired or seen the suspects flee into the residence at 1219 Third St. SE.  But they knew from the police dispatcher that guns had been fired and the individuals who apparently fired the weapons had reportedly gone into the house in question.  There was a report of four subjects running into the residence.[3]

---

[1] Doc. 28, p. 45.

[2] Doc. 28, p. 45.

[3] Doc. 28, p. 49.

(5:10 CR 239)

After arriving on the scene, Officer Mongold of the Canton Police Department observed an individual open a second story window at 1219 Third St. SE, lean out, and then withdraw from the window.  Later, Officer Mongold saw a second individual open the same window.

After a number of officers had arrived at the scene, an officer knocked on the front door of the house in question.  The defendant's mother, Melissa Hall,  answered the door.  Ms. Hall herself had heard the shots fired, and, when asked by the officers at the door if she knew why they were there, she responded affirmatively.[4]  According to Ms. Hall, the officers demanded entry and engaged in a search of the house.[5]

At the hearing regarding defendant's motion to suppress, Officer Thomas Hastings testified that to his knowledge, there were individuals who ran inside 1219 Third Street SE with guns and that the weapons were semiautomatic.  Officer Hastings further testified that the

---

[4] Doc. 28, pp. 72-73, 76.

[5] The defendant and government dispute whether defendant's mother, Ms. Hall, gave her consent for the officers to search the house and the scope of that consent.  The officers at the suppression hearing testified that Ms. Hall gave the officers her consent to search the house for suspects with guns who had reportedly run into the house.  Doc. 28, pp. 47-48.

According to Ms. Hall's testimony, the officers did not ask for permission to enter the home.  She testified they "pushed their way in" and "asked me do I know why they're there[,] [a]nd my response was, yes, there were shots heard in the neighborhood."  Doc. 28, p. 69.  Ms. Hall testified that she herself heard the shots, and that the police told her that they were responding to a 911 call regarding shots fired and that they had reason to believe the people with the guns had run into her house, and that they were looking for "suspects with guns."  Doc. 28, pp. 72-73, 76, 78.

However, because the Court concludes that in this case exigent circumstances justified the police officers' warrantless search of 1219 Third St. SE, it is not necessary for the Court to determine whether Ms. Hall consented to the search.

3

(5:10 CR 239)

officers on the scene "didn't know if the owners of the residence were safe"[6] and that the officers were concerned about the safety of the people in the house where the individuals with the guns had allegedly entered.[7]  After entering the house and evaluating the situation on the first floor, the officers still "didn't know what was going on upstairs.  We still had movement.  We could hear other officers saying there was still movement.  They had movement upstairs, so we didn't know the four people that were downstairs were the only people or if there was still other people upstairs at this point."[8]

Prior to searching upstairs for the individuals with guns that had reportedly run into the house, two subjects came down from the second floor.[9]  However, because the report was of four subject running into the residence, "we wanted to clear the second floor of any remaining suspects"[10] and because there was "a lot of movement on the second floor[,] [w]e wanted to check to make sure there was nobody concealed up in the attic space that was accessible by the second floor."[11]  The officers stood on a plastic chair to move aside an attic access panel that appeared to have been recently disturbed to look in the attic for two other suspects that reportedly ran into the house, but were yet unaccounted for.  Upon standing on the chair and

---

[6] Doc. 28, p. 22.

[7] Doc. 28, p. 23.

[8] Doc. 28. p. 25.

[9] Doc. 28, p. 49.

[10] Doc. 28, p. 49.

[11] Doc. 28, pp. 50, 63.

(5:10 CR 239)

moving the panel, the officer observed an assault rifle "laying in plain view while I was trying to look at a distance for subjects in the attic."[12]  After determining that the attic was "cleared" for suspects, Officer Mongold secured the weapons and a box of ammunition.[13]

Thereafter, the two males, the defendant and Timothy Prigden, were arrested, handcuffed and searched.  In the process, a single bullet was located in the trousers of the defendant and seized by Officer Hastings.

III.  The Law of Exingent Circumstances

The recent decision of the Sixth Circuit in *Monica Johnson v. City of Memphis, et al*.,
 -- F.3d -- , 2010 WL 3305264 (C.A.6 (Tenn.)) discusses the concept of exigent circumstance as an exception to the warrant requirement imposed by the Fourth Amendment.  The *Johnson* decision teaches:[14]

> As "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" there are several exceptions to the warrant requirement that are ultimately grounded in that standard.  *See Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed. 2d 650 (2006).  Lists of recognized exceptions are inclusive rather than exclusive.  "Exigent circumstances" are one such exception.  *See Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed. 2d 290 (1978) ("[W]arrants are generally required to search a person's home or his person unless the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."); *Thacker*, 328 F.3d at 253.  Exigent circumstances arise when an emergency situation demands immediate police action that excuses the need for a warrant.

---

[12] Doc. 28, pp. 50-51.

[13] Doc. 28, p. 51.

[14] *Monica Johnson v. City of Memphis, et al.,* 2010 WL 3305264 at *2-*3.

5

(5:10 CR 239)

> *United States v. Radka*, 904 F.2d 357, 361 (6th Cir. 1990)(citing *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)).  The government bears a "heavy burden" to demonstrate that such an exigency occurred.  *Welsh*, 466 U.S. at 749-50.  We have repeatedly recognized four situations that may rise to the level of exigency:  "'(1) hot pursuant of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others.'"  *Thacker*, 328 F.3d at 253 (quoting *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994)).  (Emphasis added).

> The Supreme Court has also recognized that another "exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City,* 547 U.S. at 403.  In *Brigham City*, police responded to a call complaining of a loud party in the neighborhood.  *Id.*  at 400-01.  Through the home's front window the police saw a fight breaking out in the kitchen, although the only injury they witnessed was a cut lip.  *Id.*  The police announced their presence, entered without consent or a warrant, prevented further violence, and made several arrests.  Reversing the Utah Supreme Court, the United States Supreme Court held that the entry was objectively reasonable under the circumstances and constitutional under the emergency aid exception.  *Id.* at 406-07.  "[L]aw enforcement officers 'may enter a home without a warrant to render emergency assistance to an injured occupants or to protect an occupant from imminent injury.'"  *Michigan v. Fisher*, 558 U.S.---, 130 S. Ct. 546, 548, 175 L.Ed. 2d 410 (2009) (per curiam) (quoting *Brigham City*, 547 U.S. at 403).  (Emphasis added).

> "Officers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." *Id.* at 549. Nor do officers need to wait for a potentially dangerous situation to escalate into public violence in order to intervene. *Id.* " '[T]he role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties.' " *Id.* (quoting *Brigham City,* 547 U.S. at 406).  The police's entry must be based on an objectively reasonable belief, given the information available at the time of entry, that a person within the house was " 'in need of immediate aid.' " *Fisher*, 130 S.Ct. at 548 (quoting *Mincey*, 437 U.S. at 392).

6

(5:10 CR 239)

The presence of a weapon itself can create an exigent circumstance if the officers have information that a suspect is armed and likely to use the weapon.  *Dickerson v. McClellan,* 101 F.3d 1151, 1160 (6th Cir. 1996) ("'The presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent.'") (quoting *U.S. v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996)).  In *Dickerson*, the police were informed by the dispatcher that a drunk individual had fired nine gunshots minutes before their arrival and the Sixth Circuit determined that "[i]t was not unreasonable for the officers to conclude that the firing of nine gunshots suggests a willingness to use a weapon."  *Dickerson*, 101 F.3d at 1160.

IV.  Warrantless Search of 1219 Third St. SE Justified by Exigent Circumstances

The government contends that the entry into the residence and the subsequent search is justified by the exigent circumstances.  The Court agrees.

In this case, a call to the police dispatcher reported gunfire, the possible presence of an assault weapon, and the entry of the persons engaged in the shooting into the house in question.  Ms. Hall, who answered the door, confirmed to the officers her understanding that they were present at her door because of shots fired.  The police officers testified at the suppression hearing that the purpose of the search was to secure the armed suspects.  The officers were concerned about the presence inside the house of individuals with guns who had just been firing the guns, the safety of the residents of the house, and their own safety as the police could not definitively determine whether the residents were under orders from the suspects to act calm, whether the residents were even aware of intruders in the house, or whether more shots might be fired by the

7

(5:10 CR 239)

suspects in the house.  Even after securing the first floor, the officers testified that not all the suspects reported had been accounted for, and movement on the second floor was being confirmed while the officers were in the house securing the first floor.  This information supported a continuing concern as to whether suspects with guns remained at large on the second floor, and for the safety of the residents and their own safety from suspects who had already demonstrated a propensity for discharging their weapons.

In this case, a multitude of facts available to the police on the scene supported officer concerns that suspects with guns were in the home, and the recent activity of these suspects in discharging the guns supported the officers' reasonable concerns for the safety of the residents and their own safety.  Officers are not required to possess ironclad proof before acting to protect the safety of residents, and are not required to wait for a potentially dangerous situation to escalate before taking action to prevent such danger.  In determining whether exigent circumstances justified the warrantless search of 1219 Third St. SE, the Court must consider the "totality of the circumstances and the inherent necessities of the situation at the time."  *United States v. Huffman,* 461 F.3d 777, 783 (6th Cir. 2006) (quoting *United States v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir. 1996)).

After considering the testimony of the police officers at the suppression hearing and the circumstances of the early morning hours of April 1, 2010, the Court finds that even though the officers did not explicitly articulate exigent circumstances as the reason for their warrantless search of the house in question, the testimony of the officers supported by the facts and circumstance of that night reflects that the warrantless search of 1219 Third St. SE for suspects

8

(5:10 CR 239)

with guns satisfies multiple factors supporting the existence of exigent circumstances and supporting an exception to the Fourth Amendment and a warrantless search of 1219 Third St. SE.

### V.  Justified Warrantless Search Supports the Warrantless Seizure of Weapons

The Court having found that the warrantless search of 1219 Third St. SE was justified by exigent circumstance, the Court also concludes that no warrant was required to seize the weapons discovered in plain view in the attic while the officers were searching for suspects. *United States v. Huffman,* 461 F.3d at 785-86.  The officers' warrantless search of the house for suspects with guns was justified by exigent circumstances.  The police were lawfully searching the house for suspects with guns that had reportedly fired shots outside.  The officers' search of the attic for suspects with guns without a warrant did not violate the Fourth Amendment based on the Court's earlier analysis.  In searching the attic for suspects, the weapons were discovered in plain view.  The weapon viewed by the officer was an assault weapon, and one of the weapons involved in the report of shots fired was stated to be an assault weapon.  Accordingly, the incriminating nature of the weapons was readily apparent to the officers searching for suspects recently involved in the discharge of weapons.  *U.S. v. Taylor*, 248 F.3d 506, 512 (6th Cir. 2001) (citing *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).  "The standard does not demand an unduly high degree of certainty; rather a plain view seizure is presumptively reasonable, assuming there is probably cause to associate the property with criminal activity."  *U.S. v. Calloway,* 116 F.3d 1129, 1133 (6th Cir. 1997) (internal quotations omitted).

9

(5:10 CR 239)

In this case, the police officers were lawfully searching for individuals reportedly shooting guns, including an assault weapon.  The nature of the officers' search, the crime reportedly at issue, and the other information available to the officers at the time constituted probable cause justifying a warrantless plain view seizure of the weapons and ammunition discovered in the attic.

### VI.  The Officers Did Not Have Probable Cause for the Warrantless Arrest of the Defendant Prior to the Seizure of the Bullet in the Defendant's Pocket

It is well understood that a warrantless search of a person is valid only if it is pursuant to a lawful arrest.  A lawful arrest may be based on either a warrant or the existence of probable cause to make the arrest.

In this case, it is apparent that the defendant was arrested upon the seizure of the firearm.  After considering the officer's testimony at the suppression hearing, the Court concludes that, at the time of arrest the seizure of the weapons did not support the lawful arrest of the defendant.[15]  Consequently, the seizure of the bullet from the defendant's pocket at the time of arrest, must of necessity, be suppressed.

### VII.  Conclusion

For the reasons contained herein, defendant's motion to suppress (Doc. 12) is granted in part and denied in part.  Defendant's motion to suppress as pertains to the weapons and ammunition discovered in the attic is DENIED.  Defendant's motion to suppress as pertains to

---

[15] Doc. 28, pp. 30-32.

(5:10 CR 239)

the bullet discovered in his pocket at the time of arrest is GRANTED.

Further, defendant's motions to suppress defendant's statements to Officer Mongold

(Doc. 7 and 13) are GRANTED.

IT IS SO ORDERED.


  September 21, 2010                           /s/ David D. Dowd, Jr.
Date                                         David D. Dowd, Jr.
                                             U.S. District Judge

11